**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JERMAINE HAMPTON[1], | Case No. 2:24-cv-01504-GMN-EJY |
| Petitioner, | |
| v. | **ORDER** |
| JEREMY BEAN[2], *et al.*, | |
| Respondents. | |

Petitioner Jermaine Hampton, a *pro se* Nevada prisoner, commenced this habeas action by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 10), challenging his state court convictions of Robbery, Conspiracy to Commit Robbery, and Stop Required on Signal of Police Officer. Also before the Court are Hampton's Motion to Compel (ECF No. 35) and Motion for Bail Pending a Decision (ECF No. 38) as well as Respondents' Motion to Extend (ECF No. 36). The Court denies the remaining grounds of Hampton's Petition, denies him a certificate of appealability, denies his Motions, and kindly directs the Clerk of Court to enter judgment accordingly.

**I.    Background**

    **a.   Factual Background**

In November 2016, an individual, Quintanar, was robbed at gun point by two men later identified as Hampton and Robert Russell ("Russell"). ECF No. 17-1 at 15. Quintanar was leaving his work, a moving company, and entered his rental car because his car was in the shop. *Id.* While sitting in his rental car, two individuals in a white Explorer stopped in front of

---

[1] The Court notes that on some state district court documents and on the state corrections department's inmate locator page, Petitioner's name is spelled Germaine Hampton.

[2] The state corrections department's inmate locator page indicates that Hampton is incarcerated at Carlin Conservation Camp. Nethanjah Breitenbach is the current warden for that facility. At the end of this Order, the Court kindly directs the Clerk of Court to substitute Nethanjah Breitenbach for Respondent Jeremy Bean. *See* Fed. R. Civ. P. 25(d).

Quintanar's car blocking him in. *Id*. as 15-16.

Russell exited the car, went to the driver side of the rental car, and told Quintanar to open the door while pointing a gun at him. *Id*. at 16. Quintanar struggled with opening the door. *Id*. Hampton exited the driver side of the white Explorer, went to the passenger side of the rental car, pointed a gun at Quintanar, and also instructed him to open the door. *Id*. Hampton and Russell stole several items from Quintanar. *Id*. After Hampton and Russell left, Quintanar went to the shop next door, began knocking on the door while yelling, and then called 911. *Id*. at 17.

A police officer located the white Explorer in the general area of the crime. *Id*. at 18. Officers attempted to pull the white Explorer over, but instead of stopping, the vehicle sped up. *Id*. The pursuit continued through multiple intersections and Hampton ran at least one red light. *Id*. The chase ended when Hampton stopped at his apartment complex and Russell fled from the car on foot. *Id*. Hampton did not run from the police, but officers had to forcefully remove him from the car. *Id*. at 19. After searching the white Explorer, the police located several items belonging to Quintanar. Officers also located a gun near the path that Russell had used to flee the scene. *Id*.

### b. Procedural Background

Hampton retained attorney Carl Arnold, Esq. ("Arnold") to represent him. ECF No. 16-48 at 7. Following a motion to withdraw, Arnold no longer represented Hampton, and the state district court appointed another attorney to represent Hampton. *Id*. The state district court continued the trial date multiple times. In May 2019, during a status hearing, Hampton informed the state district court that he wanted to proceed *pro per*. *Id*. at 8. The state district court conducted a *Faretta*[3] canvas and determined that the trial would go forward with Hampton represented by counsel. *Id*.

Following a four-day jury trial, a jury found Hampton guilty of Robbery, Conspiracy to Commit Robbery, and Stop Required on Signal of Police Officer. The state district court sentenced Hampton to an aggregate term of 8 to 21 years. The Nevada Court of Appeals

---

[3] *Faretta v. California*, 422 U.S. 806 (1975).

2

affirmed the judgement of conviction on direct appeal.

Hampton filed a state post-conviction Petition for Writ of Habeas Corpus. The state district court denied post-conviction relief, but the Nevada Court of Appeals determined that the state district court erred by denying two of Hampton's claims without first conducting an evidentiary hearing. On remand, the state district court conducted an evidentiary hearing, but nonetheless denied relief. The Nevada Court of Appeals affirmed the denial of relief.

Hampton initiated this federal habeas corpus proceeding. ECF No. 1-1. Respondents moved to dismiss certain grounds, and the Court granted, in part, dismissing Ground 2(B)(2) as duplicative to the extent it alleges a violation of his right to self-representation. ECF No. 28.

## II.      Governing Standards of Review

### a.   Review under the Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (first quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and then citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of

3

28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75.

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### b.  Standard for Evaluating Ineffective Assistance of Counsel Claims

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of ineffective assistance of counsel claims requiring Petitioner to demonstrate that: (1) the counsel's "representation fell below an objective standard of reasonableness[;]" and (2) the counsel's deficient performance prejudices Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  Courts considering an ineffective assistance of counsel claim must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.  It is Petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687.  Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner to "show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.  Rather, errors must be "so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." *Id*. at 687.

Where a state court previously adjudicated the ineffective assistance of counsel claim under *Strickland*, establishing the court's decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05.  In *Richter*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted).  The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable

argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

When evaluating claims of ineffective assistance of appellate counsel, the performance and prejudice prongs of the *Strickland* standard partially overlap. *See*, *e.g., Bailey v. Newland*, 263 F.3d 1022, 1028-29 (9th Cir. 2001); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Effective appellate advocacy requires weeding out weaker issues with less likelihood of success. The failure to present a weak issue on appeal neither falls below an objective standard of competence nor causes prejudice to the client for the same reason—because the omitted issue has little or no likelihood of success on appeal. *Id.*

### III.    Discussion

#### a.    Ground 1—Right to Self Representation

In Ground 1, Hampton alleges that his right to self-representation was violated when the state district court did not grant his request to represent himself. ECF No. 10 at 3.  He asserts that his request was made weeks before trial, and the state district court did not deny the request because of timeliness. ECF No. 41 at 2.  He contends that his counsel told him to "shut his fucking mouth," and they were unable to openly communicate with each other. *Id*. at 3.

#### i.    Additional Background Information

Hampton first mentioned that he wanted to represent himself during a calendar call on May 21, 2019, and at that time, trial was scheduled to begin on May 28, 2019. ECF No. 16-17 at 14.  Following Hampton's *Faretta* canvas on May 23, 2019, trial was then rescheduled to begin on June 4, 2019. ECF No. 16-18 at 2, 5, 9.  There had been six trial continuances for varying reasons, including Hampton firing and hiring attorneys and to allow his counsel to negotiate an agreement, which was never reached. *Id*. at 8.  At the May 21, 2019, calendar call, Hampton's attorney, Amanda Gregory ("Gregory"), informed the state district court that she was ready for trial. *Id*.

Hampton informed the state district court that "[t]he attorneys I've met all work for the State of Nevada, and have no desire to work vigorously for me or honestly," and he "kindly ask[ed] the court to dismiss this case, and if not so, [he] will be representing [himself] on this matter, and [he] need[s] some time to do so because [he] wasn't planning to do that." ECF No.

16-17 at 14.  The state district court conducted a *Faretta* canvas:

**THE COURT:** All right, Mr. Hampton, I know we talked about this the other day. Your counsel is ready to go to trial but you're not getting along with your counsel –

**THE DEFENDANT:** Not at all.

**THE COURT:** -- so it's your desire to represent yourself?

**THE DEFENDANT:** It's a forced move, it's not a desire.

**THE COURT:** Okay.

**THE DEFENDANT:** I have to, it's not a desire.

**THE COURT:** You have counsel that's prepared to proceed to trial; do you prefer to go to trial with counsel or without?

**THE DEFENDANT:** Without.

**THE COURT:** Are you prepared to represent yourself to go forward with trial next week or the week after?

**THE DEFENDANT:** Well actually, I wasn't -- I wasn't expecting to have to represent myself, so no I'm not prepared, but I have been working diligently every day since Tuesday trying to get ready.

**THE COURT:** Okay, well the only way you're allowed to represent yourself under the laws, if you can come in and do that and not necessitate a continuance. You can't come in last minute and represent yourself and get another continuance.

ECF No. 16-18 at 7-8.

### ii.  State Court Determination

The Nevada Court of Appeals held:

Hampton first argues that the district court abused its discretion when it denied his oral motion to represent himself. Hampton belatedly made his request after both parties had announced ready for trial. He maintains that the district court did not give him an opportunity to demonstrate that reasonable cause existed for his untimely motion.

We review the district court's order denying Hampton the right to represent himself for an abuse of discretion. *Guerrina v. State*, 134 Nev. 338, 341, 419 P.3d 705, 709 (2018). The Sixth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees a criminal defendant the right to self-representation. *See Faretta v. California*, 422 U.S. 806, 819-20 (1975). Yet, the right to self-representation is not absolute because it compels abandonment of another constitutional right-the right to counsel. *See id*. at 835. A district court must determine if a defendant is competent to waive his or her right to counsel and that he or she has made a knowing and voluntary waiver of this right. *Godinez v.*

*Moran*, 509 U.S. 389, 400-01 (1993). A district court nonetheless may deny a request for self-representation if it is untimely, equivocal, or made for the purpose of delay. *O'Neill v. State*, 123 Nev. 9, 17, 153 P.3d 38, 44 (2007).

The Nevada Supreme Court created a two-part test to determine whether a request for self-representation is untimely. *Lyons v. State*, 106 Nev. 438, 445-46, 796 P.2d 210, 214 (1990), *abrogated in part on other grounds by Vanisi v. State*, 117 Nev. 330, 341, 22 P.3d 1164, 1172 (2001). Under *Lyons*, if the request for self-representation can be granted "without need for a continuance, the request should be deemed timely." *Id.* at 446, 796 P.2d at 214. However, if granting the request would require a continuance, the district court may deny the request as untimely if there is no "reasonable cause to justify [the] late request." *Id.*

The district court did not abuse its discretion by denying Hampton's motion to represent himself. Hampton made his request after multiple calendar call dates during which both parties had repeatedly announced ready for trial, and finally made his request only days before trial was scheduled to commence. He expressly told the district court that he would need more time to prepare if he were to represent himself. Hampton's motion thus fails the first prong of *Lyons*. As for the second prong, Hampton could have justified the late request for a continuance had he demonstrated reasonable cause, yet there is no evidence in the record of such justification. While Hampton did participate in a sealed hearing with counsel that related to his request for self-representation, Hampton failed to provide a transcript of that hearing on appeal. When parts of the record are missing, we presume that the missing portions favor the district court's conclusion. *See Greene v. State*, 96 Nev. 555, 558, 612 P.2d 686, 688 (1980). There is also evidence in the record that Hampton had on-going issues with a parade of rotating trial counsels, and his issues were not new. Thus, Hampton has failed to demonstrate that there was reasonable cause to justify his late request, and the district court did not abuse its discretion in denying the motion to represent himself.

ECF No. 17-4 at 3-5.

### iii.   Applicable Legal Standard

The Sixth Amendment guarantees the right to assistance of defense counsel in all criminal prosecutions. U.S. Cost. amend. VI.  The Sixth Amendment also encompasses the right to self-representation at trial and to refuse the assistance of counsel. *Faretta*, 422 U.S. at 834. Because the right to counsel is guaranteed, a defendant's exercise of the right to self-representation necessarily requires a valid waiver of the right to counsel. *Sandoval. v. Calderon*, 241 F.3d 765, 774 (9th Cir. 2001) (noting that "the right to self-representation does not attach until asserted," unlike the right to counsel which "attaches unless affirmatively waived").  A waiver of the right to counsel must be unequivocal because that right is "automatic," and the assistance of counsel must be available whether the defendant has requested such assistance or not. *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989) (citing *Brewer v. Williams*, 430 U.S. 387, 404 (1977)).

The Ninth Circuit has referred to the right to self-representation as "disfavored" when compared to the important benefits expressly offered by the right to counsel. *Sandoval*, 241 F.3d at 774. A court may properly deny a defendant's request for self-representation "if the *Faretta* demand is untimely, equivocal, made for the purpose of delay, or is not knowingly and intelligently made." *Id.*

A defendant's expression of a preference for counsel over representing himself may suggest that a request is equivocal. *See Stenson v. Lambert*, 504 F.3d 873, 884 (9th Cir. 2007) (holding that a petitioner's request for self-representation was equivocal where his "requests for self-representation were concessions that he really did not want to represent himself, but that he felt the court and [defense counsel] were forcing him to do so"). Emotional or impulsive requests for self-representation are also considered to be equivocal. *See United States v. Hernandez*, 203 F.3d 614, 622 (th Cir. 2000) (explaining that an "emotional outburst in response to [a] judge's ruling" is equivocal); *Jackson v. Ylst*, 921 F.2d 882, 888–89 (9th Cir. 1990) (holding that a "request for self-representation that is 'a momentary caprice or the result of thinking out loud,' " such as an "impulsive response to the trial court's denial of [a defendant's] request for substitute counsel," is an equivocal request). In assessing whether a request was unequivocal, courts should consider the "whole record," *Walker v. Loggins*, 608 F.2d 731, 734 (9th Cir. 1979), and must "indulge in every reasonable presumption against waiver" of counsel, *Brewer v. Williams*, 430 U.S. 387, 404 (1977).

### iv. Analysis

The Nevada appellate court's decision rejecting Ground 1 withstands deferential review under AEDPA. The Supreme Court has established that a request to proceed *pro se* is timely if made "weeks before trial." *See Moore v. Calderon, 108 F.3d 261, 261 (9th Cir. 1997), overruled on other grounds by Williams v. Taylor*, 529 U.S. 362 (2000). *See Marshall v. Taylor*, 395 F.3d 1058, 1061 (9th Cir. 2005) (explaining that *Faretta* "may be read to require a court to grant a *Faretta* request when the request occurs 'weeks before trial'"); *Stenson v. Lambert*, 504 F.3d 873, 884 (9th Cir. 2007) ("*Faretta* does not articulate a specific time frame pursuant to which a claim for self-representation qualifies as timely. It indicates only that a motion for self-

representation made 'weeks before trial' is timely."); *Burton v. Davis*, 816 F.3d 1132, 1141 (9th Cir. 2016) ("[H]ad [the petitioner] asked to represent himself weeks before trial and had the trial court denied his request as untimely, we would conclude that the denial was contrary to *Faretta* and would issue the writ on that basis.").

Hampton's request to represent himself, made seven days before trial, accompanied by his admission he would not be prepared to proceed to trial, was made following six trial continuances for varying reasons, including Hampton firing and hiring attorneys. He made his request to represent himself during the May 21, 2019, status hearing where his counsel represented to the state district court that she was trial ready, and at that time, trial was scheduled to begin on May 28, 2019. The state district court conducted the *Faretta* canvas and following the *Faretta* canvas, trial was rescheduled to June 4, 2019. Notably, on May 30, 2019, at the final calendar call before trial, trial counsel mentioned she no longer had a contentious relationship with Hampton. Further, Hampton did not mention that he wanted to represent himself during the final calendar call.

In light of the record and the circumstances surrounding Hampton's request to represent himself, the Nevada Court of Appeals' determination that Hampton's request to represent himself was untimely was not an unreasonable application of *Faretta*.

### b. Ground 2(A)(1)) —Ineffective Assistance re: Conflict of Interest

In Ground 2(A)(1), Hampton alleges that trial counsel rendered ineffective assistance because of a conflict of interest. ECF No. 10 at 11. He asserts that his counsel wanted him to plead guilty, but he wanted to proceed to trial, and this conflict adversely affected their ability to communicate with each other. *Id*.

#### i. State Court Determination

The Nevada Court of Appeals held:

Hampton claimed that counsel were ineffective because of a conflict of interest. Specifically, he claimed there was a conflict because counsel failed to communicate with him, did not investigate, and told him to lie on the stand. "Conflict of interest and divided loyalty situations can take many forms, and whether an actual conflict exists must be evaluated on the specific facts of each case. In general, a conflict exists when an attorney is placed in a situation conducive to divided loyalties." *Clark v. State*, 108 Nev. 324, 326, 831 P.2d 1374, 1376 (1992) (quoting *Smith v.*

*Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991)). A conflict of interest exists if "counsel 'actively represented conflicting interests'" and the "conflict of interest adversely affected [the defendant's] lawyer's performance." *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 348 (1980)).

Hampton did not demonstrate counsel were placed in a situation that was conducive to divided loyalties. Hampton also did not demonstrate that his counsel actively represented conflicting interests. Hampton's claims were thus insufficient to show that his counsel had an actual conflict of interest. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

ECF No. 18-4 at 7-8.

### ii. Applicable Legal Standard

Effective assistance of counsel "includes a right to conflict-free counsel." *United States v. Mett*, 65 F.3d 1531, 1534 (9th Cir. 1995). In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). However, until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. *Id.* If counsel actively represents multiple defendants with conflicting interests, such that an actual conflict adversely affects counsel's performance, prejudice is presumed. *See Cuyler*, 446 U.S. at 349–50. However, the Supreme Court has instructed that *Cuyler* "does not clearly establish, or indeed even support ... expansive application" of that rule to cases outside the context of multiple concurrent representation. *Mickens v. Taylor*, 535 U.S. 162, 175 (2002). The presumption of prejudice only applies in the context of representation of multiple clients because of the "high probability of prejudice arising from multiple concurrent representation, and the difficulty of proving that prejudice." *Id*.

### iii. Analysis

The Nevada appellate court's rejection of Hampton's claim was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court. As noted by the Nevada Court of Appeals, Hampton failed to demonstrate that trial counsel actively represented conflicting interests and that this adversely affected his trial counsel's performance. Even if Hampton could show that trial counsel actively

represented conflicting interests, his ineffective assistance claim still could not be successful absent a showing that such conflict adversely affected his counsel's performance.

Even though counsel represented to the state district court that she told Hampton that it was "in his best interest to take the deal," but because "[h]e wants to go to trial, I will prepare for trial and give him the best possible trial that I can give him." ECF No. 18-33 at 27. Hampton failed to demonstrate a conflict that adversely affected his counsel's performance considering he received a trial and ultimately, the jury did not convict him of the deadly weapon enhancement. *See Mickens*, 535 U.S. 162, 171 (2002) ("[O]ur role is not to speculate about counsel's motives or about the plausibility of other litigation strategies."). Hampton is denied federal habeas relief for Ground 2(A)(1).

### c. Ground 2(A)(2)—Ineffective Assistance re: Failure to Meet with Hampton

In Ground 2(A)(2), Hampton alleges that trial counsel rendered ineffective assistance for failing to meet with him until after she announced that the defense was trial ready. ECF No 10 at 12. He asserts that his counsel did not make a significant effort to communicate with him. *Id*. at 13. Hampton contends that he did not meet with trial counsel until May 29, 2019, and during such meeting, Hampton informed counsel to interview a witness. *Id*. at 14. Based on that information, counsel requested a trial continuance to conduct an investigation. *Id*.

### i. State Court Determination

The Nevada Court of Appeals held:

> Hampton claimed counsel were ineffective for failing to communicate with him prior to trial. Specifically, he claimed counsel failed to respond to letters, did not answer phone calls, and failed to meet with him. He claimed that counsel's failure to communicate caused counsel not to interview alibi, character, and exculpatory witnesses. For the reasons stated above, Hampton failed to demonstrate a reasonable probability of a different outcome at trial had counsel communicated more with him and investigated his alibi. As to the character and exculpatory witnesses, Hampton failed to allege who these witnesses were or what they would have said, and he therefore failed to support this portion of the claim with specific facts that, if true, would entitle him to relief. *See Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004) (a petitioner claiming counsel did not conduct an adequate investigation must specify what a more thorough investigation would have uncovered). Accordingly, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

ECF No. 18-4 at 5.

### ii. Analysis

The Nevada appellate court's determination that Hampton failed to demonstrate prejudice was not an unreasonable application of *Strickland*. At trial, the victim testified that Hampton, along with his co-defendant, robbed him at gun point. ECF No. 16-23 at 24-25. Hampton drove the get-away car, but also got out of the car, and pointed a gun at the victim, looked through the victim's car, and took items from the car. *Id*. When an officer attempted to pull Hampton and his co-defendant over, they didn't stop. *Id*. at 25. Multiple officers identified Hampton as the driver of the vehicle that fled. ECF No. 16-22 at 60, 79, 121-22.

Hampton also testified at trial that he picked up the co-defendant, drove the car based on his co-defendant's instructions, and stopped the car at a location while his co-defendant got out. *Id*. at 133-35. Hampton testified that he had no idea what his co-defendant was doing because he was facetiming his seven-year-old daughter while his co-defendant asked Hampton to get out of the car and grab a bag from the trunk of the other car. *Id*. He admitted that he took the bag from the victim's car and put it in his car. *Id*. In light of the totality of the evidence, it is not reasonably probable that a different result would have occurred. Accordingly, Hampton is not entitled to habeas relief for Ground 2(A)(2).

### d. Ground 2(A)(3) and 2(A)(4) —Ineffective Assistance re: Failure to Prepare a Defense and Failure to Interview Witness

In Ground 2(A)(3), Hampton alleges that trial counsel rendered ineffective assistance for failure to prepare a defense. He asserts that his testimony was the only defense. ECF No. 41 at 10. Trial counsel testified during the evidentiary hearing that Hampton "doesn't like our assessment and it's going to be the same assessment when I met with him. I'm going to tell him there's a confession. There's property in your car. There's an identification. I'm going to tell him the same things, and he's not going to like it." ECF No. 18-33 at 37.

In Ground 2(A)(4), Hampton alleges that trial counsel rendered ineffective assistance for failure to interview a witness. ECF No. 10 at 14. He asserts that Hampton asked his counsel to interview a character witness who would testify that Hampton owned a surveillance company, and that Hampton installed cameras in a grocery store. ECF No. 41 at 11. The witness would have

testified that Hampton was left alone in the office, while money was on the desk, and that the money remained there. *Id*.

### i. State Court Determination

The Nevada Court of Appeals held:

> Hampton claimed counsel were ineffective for failing to investigate and prepare a defense. Specifically, he claimed counsel should have investigated his alibi defense that he had a job installing cameras, had access to the job site office and money, and therefore did not have a motive to commit the robbery. [FN1] The alleged evidence would not constitute alibi evidence. That Hampton had the opportunity to commit a different crime did not negate his intention, motive, or ability to commit these crimes. Further, Hampton admitted to being present during the robbery. Therefore, Hampton failed to demonstrate counsel was deficient or a reasonable probability of a different outcome at trial had this evidence been presented. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.
>
> > [FN1] Hampton attempts to add facts to this claim in his reply brief that were not presented below. Further, Hampton claims in his opening brief that counsel were ineffective for failing to interview and call his codefendant at trial. Hampton did not present these facts and claim below; therefore, we decline to consider them for the first time on appeal. *See McNelton v. State*, 115 Nev. 396, 416 (1999)

ECF No. 18-4 at 4-5.

### ii. Analysis

The Nevada appellate court's decision is not contrary to, nor an unreasonable application of federal law as determined by the United States Supreme Court and is not based on unreasonable determinations of fact in the state court record.

The Nevada Court of Appeals' conclusion that counsel did not render deficient performance was neither contrary to nor an unreasonable application of *Strickland*. As stated by the Nevada appellate court, Hampton admitted to being present during the robbery even if his version of events was that he had no idea that his co-defendant was robbing the victim. Counsel made the strategic decision to present Hampton's defense, including the decision not to present Hampton's proffered character witness. *See Strickland,* 466 U.S. at 690 ("Strategic choices made after thorough investigation of the law and facts are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.") Even if trial

13

counsel presented additional evidence, such as the proffered character witness testimony, Hampton fails to demonstrate a reasonable probability of a different outcome at trial. Accordingly, Hampton is not entitled to habeas relief for Ground 2(A)(3) and 2(A)(4).

### e. Ground 2(B)(1) —Ineffective Assistance re: Irreconcilable Conflict

In Ground 2(B)(1), Hampton alleges trial counsel rendered ineffective assistance based on irreconcilable conflict. ECF No. 10 at 16-17. He asserts that the state district court effectively forced him to proceed to trial even though he had an irreconcilable conflict with his attorney. ECF No. 41 at 12. Respondents argue that Ground 2(B)(1) should be dismissed as unexhausted. ECF No. 40 at 11-12. Although the Nevada appellate court did not specifically provide rationale in denying this claim, Hampton asserted this claim in his opening brief on appeal.

#### i. Standard of Review

When a state court rejects a claim on the merits without articulating a specific rationale, AEDPA's deferential standard of review continues to apply. *Harrington v. Richter*, 562 U.S. 86, 92 & 97-100 (2011) (when state court summarily denies a claim without discussion, federal habeas court presumes that the claim was adjudicated on its merits); *Johnson v. Williams*, 568 U.S. 289 (2013) (*Harrington* presumption applies when the state court's decision denying relief discusses some claims, but is silent with respect to other claims). In that situation, the federal court must consider the arguments or theories that could have supported the state court's decision; "and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme Court]." *Harrington*, 562 U.S. at 102.

#### ii. Applicable Legal Standard

The Sixth Amendment does not guarantee a "meaningful relationship" between a client and his attorney. *Morris v. Slappy,* 461 U.S. 1, 14 (1983). The Ninth Circuit has held that forcing a defendant to go to trial with an attorney with whom he has an irreconcilable conflict amounts to constructive denial of the Sixth Amendment right to counsel. *Brown v. Craven,* 424 F.2d 1166, 1170 (9th Cir. 1970). An irreconcilable conflict in violation of the Sixth Amendment occurs only where there is a complete breakdown in communication between the attorney and

14

client, and the breakdown prevents effective assistance of counsel. *Schell v. Witek,* 218 F.3d 1017, 1026 (9th Cir. 2000). Disagreements over strategic or tactical decisions do not rise to level of a complete breakdown in communication. *Id.*

To determine whether a conflict rises to the level of "irreconcilable," a court looks to three factors: 1) the extent of the conflict; 2) the adequacy of the inquiry by the trial court; and 3) the timeliness of the motion for substitution of counsel. *United States v. Moore,* 159 F.3d 1154, 1158-59 (9th Cir. 1998). A trial court's inquiry regarding counsel's performance on a motion to substitute counsel should be "such necessary inquiry as might ease the defendant's dissatisfaction, distrust, and concern." *United States v. Garcia,* 924 F.2d 925, 926 (9th Cir.1991) (internal quotation marks and citation omitted). It also should provide a "sufficient basis for reaching an informed decision[ ]" regarding whether to appoint new counsel. *United States v. McClendon,* 782 F.2d 785, 789 (9th Cir.1986).

The Supreme Court, however, has never held that an irreconcilable conflict with one's attorney constitutes a *per se* denial of the right to effective counsel. Although the Court may look to our circuit's precedent to see if we have already held a rule is clearly established, our decisions may not "be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam); *see Parker v. Matthews*, 567 U.S. 37, 49 (2012) (holding the Sixth Circuit erred in applying its circuit's "multistep test" that bore scant resemblance to the general rules announced by the Supreme Court). Here, Hampton does not cite to any Supreme Court case holding that an irreconcilable conflict between a lawyer and his client constitutes a constructive denial of his right to counsel, with no showing of prejudice required.

### iii. Analysis

The Nevada appellate court could have found that the state court record does not support a finding of a complete breakdown in Hampton's relationship with trial counsel and, that in light of the evidence presented at trial, Hampton failed to demonstrate prejudice under *Strickland*. Although there appears to have been communication issues between Hampton and his trial counsel, their relationship appeared less contentious by the time trial started. ECF No. 18-34.

Hampton's disagreements with counsel over strategy do not constitute an "irreconcilable conflict." *Stenson*, 504 F.3d at 886. In addition, the state district court conducted meaningful inquiries into Hampton's timely motions. ECF Nos. 16-18, 18-33.

Further, based on the evidence presented at trial, Hampton fails to demonstrate prejudice. Given that the Nevada appellate court could reasonably so find, a conclusion that Hampton has not demonstrated an ineffective assistance of counsel violation clearly would neither be contrary to nor an unreasonable application of *Strickland*. Accordingly, the Nevada Court of Appeals' decision rejecting Ground 2(B)(1) was neither contrary to nor an unreasonable application of established federal law. Accordingly, Hampton is not entitled to habeas relief for Ground 2(B)(1).

### f. Ground 2(B)(3) — Trial Court Error Denying Hampton's Motion to Substitute Counsel

In Ground 2(B)(3), Hampton alleges that the trial court erred by denying his motion to substitute counsel. ECF No. 10 at 16. Respondents renew their argument that Ground 2(B)(3) should be dismissed as unexhausted because Hampton made no argument regarding a motion to substitute counsel in his opening brief other than the statement that "[t]he trial court was well aware of these conflict issues and failed to appoint separate counsel for trial." ECF No. 17-42 at 32. In addition, other than a motion to substitute appellate counsel, Hampton did not file any motions to substitute trial counsel, and his claim relates to substitution of trial counsel. ECF No. 10 at 23.

The Court finds that Ground 2(B)(3) is unexhausted and is dismissed as such. Ground 2(B)(3) was not fairly presented to the state appellate court. Because Respondents filed a motion to dismiss Ground 2(B)(3) as unexhausted, Hampton had an opportunity to and did respond to the exhaustion issue at such time. The Court now modifies its order denying, in part, Respondents' motion to dismiss regarding the exhaustion issue for Ground 2(B)(3) as stated herein. *See City of Los Angeles, Habor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.").

### g. Ground 2(C)—Ineffective Assistance re: Appellate Counsel's Failure to Provide Transcripts

In Ground 2(c), Hampton alleges that appellate counsel rendered ineffective assistance for failure to provide sealed transcripts on appeal. ECF No. 10 at 24.  On appeal, Hampton alleged that the state district court erred by denying him his right to represent himself.  His appellate counsel, however, failed to attach a transcript of a hearing demonstrating the conflict between Hampton and his trial counsel. ECF No. 41 at 13.  Hampton contends that had appellate counsel included the transcripts, the outcome on direct appeal would have been different. *Id*. at 14.

### i.  State Court Determination

The Nevada Court of Appeals held:

Hampton argues the district court erred by denying his claim that appellate counsel were ineffective for failing to provide an adequate record on appeal. …

Hampton claimed that counsel failed to provide a transcript that would have supported his appellate claim that the district court erred by denying him his right to represent himself pursuant to *Faretta*. Specifically, he claimed the transcript would have supported his claim that reasonable cause existed for his untimely request to represent himself. Criminal defendants have a Sixth Amendment right to represent themselves so long as the waiver of the right to counsel is intelligent and voluntary. *See O'Neill v. State*, 123 Nev. 9, 17, 153 P .3d 38, 43 (2007). "Upon invocation of the right to self-representation, the district court should conduct a *Faretta* canvass to ensure the waiver of the right to counsel is made knowingly, voluntarily, and intelligently." *Sims v. State*, 139 Nev., Adv. Op. 55, 541 P.3d 130, 133 (2023). "A district court may ... deny a defendant's request for self-representation where the request is untimely, the request is equivocal, the request is made solely for the purpose of delay, the defendant abuses his right by disrupting the judicial process, or the defendant is incompetent to waive his right to counsel." *O'Neill*, 123 Nev. at 17, 153 P.3d at 44 (internal quotation marks omitted). The Nevada Supreme Court created a test to determine whether a request for self-representation is untimely. *See Lyons v. State*, 106 Nev. 438, 445-46, 796 P.2d 210, 214 (1990), *abrogated on other grounds by Vanisi v. State*, 117 Nev. 330, 341, 22 P.3d 1164, 1172 (2001). The district court may "deny a request for self-representation on the ground of untimeliness alone, if the request is not made within a reasonable time before commencement of trial or hearing and there is no showing of reasonable cause for the lateness of the request." *Id.*

The district court held an evidentiary hearing where only one of Hampton's counsel testified. When asked why they did not include the sealed transcript, counsel testified, "I don't have an explanation," and then speculated that "we did not think it was necessary." It was counsel's responsibility to provide "any ... portions of the record essential to determination of issues raised in [the appeal]." NRAP 30(b)(3). Counsel's failure to provide this court on direct appeal with a copy of the transcript from a sealed hearing resulted in this court having to presume that the missing

transcript supported the district court's conclusion that the request was untimely and there was no reasonable cause to excuse the untimely request. *Hampton v. State*, No. 79683-COA, 2020 WL 6955398, *2 (Nev. Ct. App. Nov. 25, 2020) (Order of Affirmance). The transcript that was not provided would have aided this court in determining the *Faretta* issue raised on appeal. Therefore, we conclude that counsels' performance was objectively unreasonable.

However, we conclude that Hampton failed to demonstrate his claim had a reasonable probability of success on appeal had counsel provided the transcript to this court. Hampton claimed that he had reasonable cause for the lateness of his request to represent himself because of irreconcilable differences with his counsel. After reviewing the transcripts and holding an evidentiary hearing, the district court found that Hampton failed to demonstrate that he had reasonable cause to justify the late request to represent himself because the differences appeared to be resolved after the sealed hearing. This finding is supported by the record. The record shows that at the end of the sealed hearing, counsel and Hampton agreed to meet and discuss his case and the district court set a status check to see whether Hampton and counsel were able to work out their differences. At the hearing a week later, counsel stated they had met with Hampton and ultimately did further investigation. Hampton did not renew his request to represent himself or otherwise indicate the differences were not resolved. Accordingly, we conclude that Hampton failed to demonstrate he was prejudiced by counsel's deficient performance, and the district court did not err by denying this claim.

ECF No. 19-23 at 2-5.

### ii.   Analysis

The Nevada Court of Appeals' determination that Hampton failed to demonstrate prejudice was not an unreasonable application of *Strickland*. As stated by the Nevada Court of Appeals, following the postconviction evidentiary hearing wherein the state district court reviewed the transcripts, the state district court found that Hampton's request to represent himself was untimely and his differences with counsel, nonetheless, appeared to have been resolved after the hearing. The Nevada appellate court reasonably determined that Hampton fails to demonstrate a reasonable probability of a different outcome on appeal had appellate counsel attached the transcripts in support of his appellate claim. Hampton is denied habeas relief for Ground 2(C).

### h.   Ground 3—Violation of Right to Fair Trial and Impartial Judge

In Ground 3, Hampton alleges that the state district court judge was biased towards him. ECF No. 41 at 15. He asserts that the trial judge during his trial, put on lip balm, looked to her right, rested her face in her hand, yawned, and coughed during his testimony. ECF No. 10 at 27-30. During other witness's testimony, however, the trial judge remained "neutral, disinterested,

and dignified." *Id*. at 28.  During the postconviction evidentiary hearing, Hampton's trial counsel testified that she observed the state district court judge "move around a little bit more in her chair," when Hampton took the stand to testify, and that "at one point she did put on lip balm and looked over to her right." ECF No. 18-34 at 100.  Hampton argues that the trial judge failed to maintain decorum and acted inappropriately during his testimony.

### i.  State Court Determination

The Nevada Court of Appeals held:

> Finally, Hampton claims the district court judge should have recused herself from his case because of bias. Hampton claims the district court judge was biased because she stated that the sentence was appropriate in this case and that she would have imposed an even more severe sentence if possible. "[R]emarks of a judge made in the context of a court proceeding are not considered indicative of improper bias or prejudice unless they show that the judge has closed his or her mind to the presentation of all of the evidence." *Cameron v. State*, 114 Nev. 1281, 1283, 968 P.2d 1169, 1171 (1998). This statement was made in explanation of the district court's conclusion that Hampton failed to demonstrate prejudice from the sentencing court's consideration of his use of a deadly weapon during the robbery. Further, Hampton failed to demonstrate this remark showed the district court judge had closed her mind to all of the evidence. Therefore, we conclude Hampton failed to demonstrate that the district court was biased and that he is entitled to relief on this claim.

ECF No. 18-4 at 11-12.

### ii.  Applicable Legal Standard

"A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955).  Fairness "requires an absence of actual bias," but it is "endeavored to prevent even the probability of unfairness." *Id*.  This "most basic tenet of our judicial system helps to ensure both the litigants' and the public's confidence that each case has been adjudicated by a neural and detached arbiter." *Hurles v. Ryan*, 752 F.3d 768, 788 (9th Cir. 2014).  "[W]hen a defendant's right to have his case tried by an impartial judge is compromised, there is structural error that requires automatic reversal." *Greenway, v. Schriro*, 653 F.3d 790, 805 (9th Cir. 2011).

"[T]he floor established by the Due Process Clause clearly requires a ... judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997).  Actual bias is shown if the judge "has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case." *Tumey v. Ohio*,

273 U.S. 510, 523 (1927). But a due process violation occurs whenever "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). To this end, the Supreme "Court has asked whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment.'" *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883-84 (2009) (quoting *Withrow*, 421 U.S. at 47); *see also Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) (explaining that the Court ask "whether, as an objective matter, 'the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias' " (quoting *Caperton*, 556 U.S. at 881)). Indeed, "[e]very procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused denies the latter due process of law." *Tumey*, 273 U.S. at 532.

### iii.  Analysis

The Nevada Court of Appeals reasonably determined that Hampton was not entitled to relief. Here, Hampton does not argue that there was an extrajudicial source of actual prejudice. The trial judge's alleged actions do not rise to the level of demonstrating risk of actual bias or prejudgment. The trial judge's alleged actions do not indicate the sort of bias that could arguably amount to a constitutional violation. *See Martinez v. Ryan*, 926 F.3d 1215, 1226 (9th Cir. 2019) ("The Supreme Court, for its part, has recognized an appearance of impropriety in only a few cases in which the judge had a direct pecuniary interest in the case, was involved in a controversy with a litigant, or was part of the accusatory process."). The Nevada Court of Appeals' ruling was not contrary to, or an unreasonable application of, clearly established federal law. Hampton is denied habeas relief for Ground 3.

### IV.  Certificate of Appealability

This is a final order adverse to Hampton. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner*, 281 F.3d at 864-65. Pursuant to 28 U.S.C. § 2253(c)(2),

20

a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.* Applying these standards, the Court finds that a certificate of appealability is unwarranted.

### V.    Hampton's Motions

In his Motion to Compel, Hampton highlighted to the Court that he filed a response to Respondents' Motion to Extend because the Court did not cite to his response in its order granting Respondents' Motion. ECF Nos. 30, 33, 35. Hampton's Motion to Compel is denied as moot.

Hampton requests bail pending the Court's decision. ECF No. 38. Federal Rule of Appellate Procedure 23 "does not appear to contemplate a release on bail pending an initial decision in district court." *In re Roe*, 257 F.3d 107, 1080 n.2 (9th Cir. 2001). As such, there are no federal rules of statutes addressing this Court's authority to grant or release pending a decision on the merits of a federal habeas petition. Further, the Ninth Circuit has specifically not resolved the issue of "whether a district court has the authority to grant bail pending a decision on a 28 U.S.C. § 2254 habeas corpus petition." *Id*. at 1079-80. As the Court nonetheless denies his habeas petition herein, Hampton's Motion for Release on Bail is denied.

### VI.    Respondents' Motion to Extend

Respondents' Motion to Extend time to file their Answer is granted *nunc pro tunc*. ECF No. 36.

### VII.    Conclusion

**IT IS HEREBY ORDERED** that Petitioner Jermaine Hampton's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 10) is denied.

///

**IT IS FURTHER ORDERED** that Petitioner's Motion to Compel (ECF No. 35) and Motion for Bail Pending a Decision (ECF No. 38) are denied.

**IT IS FURTHER ORDERED** that Respondents' Motion to Extend Time (ECF No. 36) is granted *nunc pro tunc*.

**IT IS FURTHER ORDERED** that a certificate of appealability is denied.

**IT IS FURTHER ORDERED** that the Court kindly directs the Clerk of Court to substitute Nethanjah Breitenbach for Respondent Jeremy Bean, enter judgment, and close this case.

DATED:   January 20, 2026

_____
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE

22